```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION


ARGO SYSTEMS FZE,                  *
                                   *
     Plaintiff,                    *
                                   *
vs.                                *   CIVIL ACTION 04-00321-CG-B
                                   *
LIBERTY INSURANCE PTE. LTD.,       *
           et al.,                 *
                                   *
     Defendants.                   *
```

**ORDER**

This action is before the Court on Plaintiff Argo Systems FZE's Motion to Compel Deposition (Doc. 56) and Defendants Liberty Insurance Pte. Ltd. and Marine Insurance Services Pte. Ltd.'s Motion for Leave to Name an Additional Expert (Doc. 64). With regards to Plaintiff's Motion to Compel, the Court notes, as a preliminary matter, that with the exception of Plaintiff's supporting brief (Doc. 61), Plaintiff's additional evidentiary support (Doc. 62), Defendants' response in opposition(Doc. 59), Defendants' corrected response in opposition (Doc. 60), and Defendants' additional memorandum in opposition (Doc. 67), the parties were not directed, nor did they request permission to file any additional briefs addressing Plaintiff's Motion to Compel. Accordingly, Documents Nos. 68, 82 and 83 are **STRIKEN** because they are

1

unnecessary and were filed without leave of Court. Defendant's Motion to Strike (Doc. 88) is **DENIED** as Moot.

Plaintiff Argo Systems FZE filed this action on May 14, 2004 against Defendants Liberty Insurance Pte. Ltd., Marine Insurance Services Pte. Ltd., DeWitt Stern Group, Inc., and DeWitt Stern Imperatore, Ltd., following the denial of its insurance claim.  Plaintiff, as owner of the vessel M/V COPA CASINO, secured a marine insurance policy from Defendants Liberty Insurance Pte. Ltd. (hereinafter "Liberty") and Marine Insurance Services Pte. Ltd. (hereinafter "MIS")to cover the voyage of the vessel from Mobile, Alabama to Alang, India. The vessel sank en route, and Plaintiff made a claim on the policy (Doc. 1).  MIS and Liberty, which is located in Singapore, retained the law firm of Fowler, Rodriguez & Challis, LLP to investigate the loss and render advice regarding coverage.  The investigation was lead by Mr. Jon W. Wise, a member of the law firm, and Defendants' trial counsel in this matter  (Doc. 61, Ex. A, ps. 238, 240, 250-251). Based on the results of the investigation that was conducted by Fowler, Rodriguez & Challis, LLP, Defendants decided to deny Plaintiff's claim.

Mr. Wise drafted, on behalf of Liberty and MIS, the letter of denial which was transmitted to Plaintiff (Doc. 61,

2

Ex. B).  In the letter, dated July 18, 2003, Mr. Wise states that the vessel and tow were in violation of certain express warranties in the policy, and that the insureds made several misrepresentations throughout their dealings with MIS.  He further states that "the decision to deny coverage was based upon the investigation of the facts and circumstances surrounding the purchase/sale of the COPA CASINO between numerous entities, the preparation of the vessel for towage to India, and the subsequent towage of the vessel to the point at which it sank."

   Plaintiff herein is seeking an Order compelling MIS and Liberty to provide the entire claim file relating to the denial of Plaintiff's insurance claim, and compelling Mr. Wise to submit to a deposition.  The undersigned conducted a hearing on April 22, 2005 to afford the parties an opportunity to present their respective positions.  At the hearing, and in the pleadings, counsel for Plaintiff asserted that Defendants' underwriter has testified under oath that the decision to decline payment of the subject insurance claim was based upon the investigation that was performed by and advice provided by Mr. Wise and his law firm.  During his deposition, Defendant MIS's underwriter, Richard J. Yeo, testified that MIS requested the law firm to investigate and find out all the

circumstances related to the loss, to "get to the bottom of this loss." (Doc. 61, Ex. A, p. 251). Mr. Yeo further testified that the attorneys spoke to the witnesses referenced in the denial letter and that the attorneys, as opposed to the underwriter, could verify the information provided by the witnesses and the particulars of the investigation. (Doc. 61, Ex. A, p. 238, 240).

According to Plaintiff's counsel, Plaintiff is entitled to depose defense counsel because he essentially took on the role as insurance investigator with respect to the loss at issue, and as such, he is the only person who can provide detailed information about the substance of the investigation. Plaintiff further asserts that where bad faith refusal to pay is alleged, and the insurance company bases its denial upon an investigation performed by and advice provided by an attorney, the attorney-client privilege and the work product doctrine do not attach to the investigation or advice.

Defendants assert that Plaintiff has not alleged facts sufficient to establish a prima facie bad faith claim; thus, the attorney/client privilege and attorney work product doctrine are not implicated. Defendants further assert that they have not invoked "advice of counsel" as a defense to Plaintiff's bad faith claim; thus, they have not waived the

4

protections of the attorney/client privilege and attorney work product doctrine. Defendants also note that Plaintiff has been informed of the witnesses who were interviewed as part of the investigation, and has had an opportunity to speak to those individuals.

Based upon the information provided at the hearing, and in the parties' respective briefs and supporting materials, the undersigned finds that Plaintiff's Motion to Compel is due to be **GRANTED** in part, and **DENIED** in part. The Federal Rules of Civil Procedure provide that parties may obtain discovery, including by oral depositions, "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and that "relevant information need not be admissible." Fed. R. Civ. P. 26(b)(1). However, a district court may limit:

> The frequency or extent of the use of discovery methods otherwise permitted under [the federal] rules...if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2).

While the federal rules do not prohibit the deposition of opposing counsel, as a general rule, such depositions are disfavored. In Shelton v. American Motor Corp., 805 F.2d 1323, 1327 (8th Cir. 1986), the Eighth Circuit noted that "taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation,... distracts from the quality of client representation...[and has a] chilling effect...on the truthful communications from the client to the attorney...." Accordingly, the Eighth Circuit held that parties seeking to depose "opposing counsel" must show that: (1) no other means exist to obtain the information sought through the deposition than to depose opposing counsel; (2) the information sought is relevant and not privileged; and (3) the information is crucial to the preparation of the case. Id. at 1327.

Describing the Shelton rule as rigid, the Second Circuit, in Official Comm. Of Unsecured Creditors of Hechinger Inc. Co. of Del., Inc. v. Friedman, 350 F.3d 65 (2nd Cir. 2003), directed that:

> The standards set forth in Rule 26 require a
> flexible approach to lawyer depositions whereby

6

>     the judicial officer supervising discovery takes
>     into account consideration of all the relevant
>     facts and circumstances to determine whether
>     the proposed deposition would entail an
>     inappropriate burden or hardship.  Such
>     considerations may include the need to depose
>     the lawyer, the lawyer's role in connection
>     with the matter on which discovery is sought
>     and in relation to the pending litigation, the
>     risk of encountering privilege and work-product
>     issues, and the extent of discovery already
>     conducted...Under this approach, the fact the
>     proposed deponent is a lawyer does not
>     automatically insulate him or her from a
>     deposition nor automatically require prior
>     resort to alternative discovery devices, but
>     it is a circumstance to be considered.

Friedman, 350 F.3d at 72.

The undersigned concludes, based on the facts in the instant case, that regardless of whether the Shelton test or the flexible approach detailed in Friedman is utilized, Plaintiff has established a genuine need for the deposition of Defendant's counsel, Jon Wise, on the subject of the investigation of Plaintiff's underlying loss.  In the insurance context, "no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer, [but] simply because [the attorney's] assigned duties were investigative in nature" does not preclude an assertion of the attorney-client privilege.  Therefore, "the relevant question is not whether [the attorney] was retained to conduct an investigation, but

rather, whether this investigation was related to the rendition of legal services.  If it was...the privilege is not waived.  <u>Cutrale Citrus Juices USA, Inc., v. Zurich American Ins. Grp.,</u> 2004 U.S. Dist. LEXIS 22487 (M.D. Fla. 2004); *See also*, <u>Jones v. Scientific Colors, Inc.</u>, 2001 U.S. Dist. LEXIS 10753, *3 (N.D. Ill. 2001)(where attorney was actively involved in investigation, and appeared uniquely qualified to explain the scope of the investigation and its findings, court held that the plaintiff was entitled to depose attorney regarding the nature and scope of investigation).

In the case sub judice, it is clear that Mr. Wise and his law firm initially performed services in the nature of a claims adjuster/claims investigator.  The evidence presented established that because of the insurance company's physical location, the company retained Mr. Wise and his firm, who were located in closer proximity to the site of the loss, to investigate and gather information about the underlying loss so as to enable MIS to make a coverage determination.  Such an investigation, which is routinely performed by the insurance company itself, was not transformed into an investigation cloaked with privilege merely because it was performed by Mr. Wise and his firm.  While Defendant asserts that Plaintiff has been informed of the witnesses who were interviewed in

8

connection with the investigation, such information tells Plaintiff little regarding the manner in which the investigation was conducted, the documents reviewed in connection with the investigation, or the existence of any perspective witnesses who Defendants may have elected not to interview as part of the investigation.  Accordingly, Plaintiff is entitled to depose Mr. Wise on the limited subject of his firm's "investigation of the facts and circumstances surrounding the purchase/sale of the COPA CASINO between numerous entities, the preparation of the vessel for towage, and the subsequent towage of the vessel to the point at which it sank."  Plaintiff has not, however, presented any evidence that Defendants have offered the "advice of counsel" defense.  Thus, while Plaintiff is entitled to learn the facts surrounding the underlying investigation, Plaintiff may not question Mr. Wise regarding any advice that he and other members of his firm provided to Defendants.

Because of the limited inquiry that is being authorized, and due to the negative impact that deposing a party's trial counsel can have on the litigation process, the undersigned **DIRECTS** that the deposition of Mr. Wise is to be conducted on written questions in accordance with the procedures established by Rule 31 of the Federal Rules of Civil

Procedure.  *See* Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1423 (llth Cir. 1994)(district court did not abuse its discretion in ruling that plaintiffs may depose the defendants' attorney only by written questions).  Plaintiff's written deposition questions are to be served no later than **June 13, 2005.**  Defendants are to serve any cross questions by **June 17, 2005**, and Plaintiff is to serve any redirect questions by **June 22, 2005.**  The deposition is to be conducted no later than **June 30, 2005.**

As noted supra, Plaintiff has also requested the MIS and Liberty's claim file generated in connection with the investigation and denial of Plaintiff's claim.  Defendants assert that all non-privileged documents have already been provided to Plaintiff; however, no privilege log has been submitted.  Accordingly, Defendants are hereby **DIRECTED** to submit, by **June 13, 2005,** a privilege log setting forth a description of every document withheld, the creation date of each document, and the name and title of the author and all recipients of each such document.  Additionally, Defendants are **DIRECTED** to submit, by **June 13, 2005**, a copy of the documents to the undersigned for an in camera inspection.

Turning now to Defendants MIS and Liberty's Motion for Leave to Name an Additional Expert (Doc. 64), the undersigned,

10

based on a review of the motion, Plaintiff's opposition (Doc. 70), and the case file, **DENIES** Defendants' motion.  According to Defendants, Mr. Sargent will offer opinions about the condition of the COPA CASINO.  The record reflects that the subject vessel sank on March 16, 2003, and that following receipt of Plaintiff's claim, Defendants ordered an investigation into the loss.  A denial letter dated July 18, 2003 asserted that the vessel was operated in violation of the warranties outlined in the policy, and that it was unseaworthy.  Accordingly, it appears clear that as early as July 2003, the parties were on notice that the condition of the vessel was in issue.

In the original Scheduling Order entered on August 6, 2004 (Doc. 26), Plaintiff was given five (5) months in which to name its experts, and Defendants were afforded six (6) months, or until February 4, 2005, to make their expert disclosures.  In a motion seeking modification of the Order (Doc. 43), Defendants listed a litany of reasons supporting their request for additional time for discovery, but never once indicated the need for more time in which to name experts.  Moreover, the undersigned conducted a discovery conference with counsel for the parties on February 28, 2005, and Defendants did not bring to the Court's attention any need

for additional time for expert disclosures.  Accordingly, although the Scheduling Order was amended at Defendants' request (Doc. 47), the expert disclosure deadlines were not modified because such was not requested.  In light of the fact that the condition of the vessel has long been contested between the parties, the fact that Defendants initially began investigating the sinking of the vessel and its condition in 2003, and the fact that Defendants did not raise with the Court any concern about the expert disclosures deadlines during the February discovery conference, the undersigned concludes that Defendants have failed to demonstrate good cause for their untimely disclosure.

Courts have both the authority and responsibility for ensuring that cases proceed in a timely manner.  <u>Chrysler Int'l Corp. v. Chemaly</u>, 280 F.3d 1358, 1360 (11th Cir. 2002)("Given the caseload of most district courts and the fact that cases can sometimes stretch out over years, district courts must have discretion and authority to ensure that their cases move to a reasonably timely and orderly conclusion"); <u>Perez v. Miami-Dade County</u>, 297 F.3d 1255, 1263 (11th Cir. 2002)("Indeed, we have repeatedly emphasized the responsibility of trial courts to manage pretrial discovery properly in order to avoid 'a massive waste of judicial and

private resources' and a loss of society's 'confidence in the courts' ability to administer justice.'"), *quoting* <u>Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.</u>, 162 F.3d 1290, 1333 (11th Cir. 1998). *See also* Advisory Committee Notes, Fed. R. Civ. P. 16 ("Rule 16(b) assures that the judge will take some early control over the litigation...").

The importance of observing deadlines contained in scheduling orders is recognized in Rule 16(b), where it is provided that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district court...." Moreover, the Eleventh Circuit, in affirming the denial of an untimely motion to amend a complaint noted that "this good cause standard precludes modification [of the scheduling order] unless the schedule cannot "be met despite the diligence of the party seeking the extension". <u>Sosa v. Airpring Systems, Inc.,</u> 133 F.3d 1417, 1418 (11th Cir. 1998).

Relying on the <u>Sosa</u> decision, the court in <u>White v. Volvo Trucks of North America, Inc</u>., 211 F.R.D. 668 (M.D. Ala. 2002), held that because the plaintiff failed to show that she could not have located, disclosed and furnished a report from an economic expert by exercising due diligence during the period of over six months between entry of the scheduling order and expiration of the deadline, there was no basis for

13

permitting the plaintiff to name an expert outside of the deadline. Id. at 670.  In reaching its decision, the court noted that "If this court were to allow such late disclosure under the facts in this case, it would be most difficult for the court to insist on compliance with deadlines set in its many other cases.  Allowance of use of this expert report would, in effect, render such deadlines set in Rule 16 Scheduling Orders meaningless." Id.  In this case, Defendants have not established good cause for their untimely disclosure. Not only have they been on notice since 2003 that the condition of the vessel was contested, but it appears that they have had in their possession, for some time, much of the information upon which Mr. Sargent's report is based.  With respect to any new information relied upon by Mr. Sargent, Defendants have not established that they acted diligently to obtain such information through discovery.  Instead, the record reflects that early on, Defendants unilaterally elected not to pursue discovery because their motion to dismiss was pending.  Additionally, while Defendants assert that Plaintiff would not be prejudiced by their untimely disclosure of Mr. Sargent, Plaintiff would in fact be prejudiced if it not only has to depose Defendants' new expert, but is also forced to explore the possibility of locating and retaining a

14

rebuttal expert at this late juncture.

Based upon a careful review of Defendants' Motion, Plaintiff's opposition, and the case file, the undersigned finds that Defendants have not demonstrated good cause so as to justify their untimely disclosure of Mr. Sargent as an expert in this case.  Accordingly, Defendants' Motion is **DENIED**.

DONE this **7th** day of **June, 2004.**

                                                                S/ Sonja F. Bivins
                                                                UNITED STATES MAGISTRATE JUDGE